# Phœnixville Borough, Appellant, *v.* Eyrich.

*Boroughs—Hawkers and peddlers—License—Ordinance—Classification.*

1. A borough ordinance prohibiting any person without a license "to sell or offer for sale at retail upon the streets of the borough, or from house to house, any goods, wares or merchandise of any kind, or of any meat, fish, groceries, provisions or foods of any kind, except milk," is a valid exercise of the municipal power.

2. The exception of milk in such an ordinance is not an improper classification.

3. Where a butcher not only sells from his shop, but also sells from house to house, the payment of the mercantile tax for the business conducted at the shop, will not protect him from the penalty provided by a borough ordinance prohibiting any person from selling from house to house without a license.

4. If the evidence is conflicting as to whether he merely makes deliveries with his wagon and takes orders, or whether he in fact sells from house to house, the case is for the jury.

Argued Nov. 16, 1909. Appeal, No. 11, Oct. T., 1909, by plaintiff, from judgment of C. P. Chester Co., April T., 1907, No. 20, on verdict for defendant in case of Phœnixville Borough v. Calvin R. Eyrich. Before RICE, P. J., HENDERSON, MORRISON, HEAD, BEAVER and PORTER, JJ. Reversed.

Appeal from judgment of burgess. Before HEMPHILL, P. J.
The facts appear by the opinion of the Supreme Court.
The court gave binding instructions for defendant.
Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Gibbons Gray Cornwell,* with him *Samuel A. Whitaker,* for appellant.—A borough has authority to require persons canvassing from house to house for the purpose of selling goods, to take out a license. Under the police power delegated by the general borough law of April 3, 1851, P. L. 320, it may

impose a penalty for violation of such ordinance: Mechanicsburg v. Koons, 18 Pa. Superior Ct. 131; Mt. Carmel Boro. v. Fisher, 21 Pa. Superior Ct. 643; Warden's License, 24 Pa. Superior Ct. 75; Com. v. Rearick, 26 Pa. Superior Ct. 384; Harrisburg v. Stahl, 11 Dauph. 18; Com. v. Deinno, 20 Pa. C. C. Rep. 371; Com. v. Cotton (No. 2), 1 Ches. 77; Sayre Boro. v. Phillips, 148 Pa. 482; Shamokin Boro. v. Flannigan, 156 Pa. 43; Sharon Boro. v. Hawthorne, 123 Pa. 106; Boro. of Danville v. Weaver et al., 4 Pa. Dist. Rep. 768; Wormser v. Allentown, 8 Pa. Dist. Rep. 649; Lancaster v. Reese, 22 Lanc. 37.

*H. H. Gilkyson* and *T. Walter Gilkyson,* for appellee.—A resident dealer who has a regular shop or stand is not within the terms of the ordinance: Mt. Carmel Boro. v. Fisher, 21 Pa. Superior Ct. 643.

The council cannot do what the legislature is forbidden to do: Norristown v. Norristown Pass. Ry. Co., 148 Pa. 87; New Castle v. Cutler, 15 Pa. Superior Ct. 612; Sayre Boro. v. Phillips, 148 Pa. 482; Com. v. Mintz, 19 Pa. Superior Ct. 283; Warden's License, 24 Pa. Superior Ct. 75.

Opinion by Head, J., March 3, 1910:

The plaintiff borough duly enacted an ordinance, the first section of which is as follows: "It shall be unlawful for any person to sell or offer for sale at retail upon the streets of the borough, or from house to house, any goods, wares or merchandise of any kind, or of any meat, fish, groceries, provisions, or foods of any kind except milk, without first obtaining a license or permit for such purposes from the burgess."

The learned counsel for the appellee contends that this was an invalid exercise of the power of the borough to legislate upon such matters. The existence of the power to regulate the business that might be lawfully conducted upon the borough streets is not, as we understand it, denied. Even the most casual examination of this ordinance shows that it is aimed at the regulation and control of a business, and is not an attempt to prevent some persons doing that, the right to

do which is by the ordinance given to others. As a consequence it is not obnoxious to the same objection that was successfully urged against the ordinance in Sayre Borough v. Phillips, 148 Pa. 482. In that case the nature and character of the defect in the ordinance are fully disclosed, we think, in the following brief excerpt from the opinion: "So long, however, as it bears upon all persons impartially, it may fairly claim to be a police regulation intended to destroy a business that was regarded as injurious; but at the end of the prohibiting section of the ordinance a proviso may be found which exempts all residents of the borough of Sayre from its operation. The proviso converts the police regulation into a trade regulation. The ordinance, taken as a whole, does not prohibit an injurious business, but injurious competition." In the present case the ordinance prohibits sales upon the streets of certain classes of articles, and it bears alike upon all persons engaged in the sale of them or any of them. There is no exemption which would permit one man or class of men to sell meat, fish, groceries, etc., whilst the general ordinance forbids all other persons to do those same things.

The contention more precisely stated is that the ordinance classifies the kinds of business which can be done upon the borough streets and exempts from its operation one class, to wit, milk, whilst at the same time it prohibits sales of all other classes of merchandise or food, except under the conditions imposed by the ordinance.

The mere fact, however, that a statute of the legislature, or a municipal ordinance enacted under a delegation of authority from the legislature, creates classifications is not, of itself, a sound objection to the validity of the statute or ordinance. It has long been held that where such classification is not arbitrary, but rests upon natural and substantial grounds, the recognition of which is reasonably necessary for the well-being of the community, it is permissible and will be upheld by the courts. The rule on the subject, relied on by the learned counsel for the appellee in his printed brief, as laid down by the supreme court of the United States in

Barbier v. Connolly, 113 U. S. 27, is as follows: "In police regulations, classification must always rest on some real difference which bears a reasonable and just relation to the act in respect of which the classification is proposed. In other words, none should be exempted from the operation of the law for reasons purely arbitrary, fantastical, sentimental, or based on favor." The decisions of the courts of our own state are in thorough harmony with this.

Even if in construing the above statute or ordinance, we may regard milk as food at all, Com. v. Kebort, 212 Pa. 289, its universal use, its peculiar characteristics, the necessity of handling it in a particular manner, naturally tend to put it in a class by itself among the general articles commonly used for the sustenance of human life. Indeed, modern knowledge has taught us that, if we are to avoid many serious dangers, the production and sale of milk must of necessity be surrounded with more rigid inspection and more complete safeguards than would be reasonably necessary in most other classes of articles for human consumption. It is an animal product. It constitutes the universal and almost the sole sustenance of infants and small children. It is chiefly produced in the country, whilst its consumption is largely in the centers of population. It remains fit for use but for a very short period of time except under conditions not within the reach of the vast majority of consumers.

In Mechanicsburg Borough v. Koons, 18 Pa. Superior Ct. 131, Porter, J., in speaking of the business of peddling fish, said: "The business is one in which the failure to exercise proper care, in the preservation of the commodity from decay, might quickly result in the change of a nutritious article of food into a noxious poison." All of this, and more, could well be said in relation to the sale of milk, constituting as it does the chief source of nourishment to the infant and the invalid, the two classes of human beings least able to resist or throw off the deleterious effects that would follow its use after it had, for any reason, become unwholesome.

These considerations lead us to the conclusion that in setting apart in a class by itself the business of peddling milk,

and leaving it subject or to be hereafter subjected to such special regulations as the preservation of the public health may require, the borough was making no arbitrary classification, but rather exercising a commendable vigilance in safeguarding the lives and health of its inhabitants. We think, therefore, the enactment of this ordinance was a valid exercise of municipal power.

On the trial the defendant presented the following point: "The defendant, being a resident dealer in the borough of Phœnixville, with a regular place of business in said borough for which he pays a mercantile tax, is not amenable to the ordinance of August 2, 1905, entitled, etc., and the verdict of the jury should be for the defendant." This point was affirmed and a verdict directed accordingly. It is agreed on all sides that the ordinance was not aimed at the business of the defendant, conducted by him in the shop or store, for which he paid a mercantile tax. Nor was the evidence directed to any such business. The borough alleged that in addition to the sales made at his shop, the defendant sold meats from a wagon by a house to house canvass through a certain section known as the Hungarian section.

Upon a motion for a new trial the learned court below was convinced that it had fallen into error in the affirmance of this point, and we are forced to reach the same conclusion. The trial judge, however, refused to award a new trial because he was of opinion that the evidence did not show any violation of the ordinance by the defendant. If this were true, the judgment entered would have been right, even if the instructions originally given were wrong. An examination of the evidence, however, impresses us that if the business, which the defendant conducted in his wagon on the streets, amounted to sales of his meat, the ordinance had been violated. They were not occasional and sporadic instances, if the evidence is to be believed. On the contrary, this business was conducted so continuously that, if the transactions amounted to sales, the defendant could not well deny that he was a huckster or vender of meats on the streets of the borough. We do not think the court could properly declare,

as a pure question of law, whether the transactions amounted to sales on the streets or whether they were but, as the defendant contended, deliveries on the street from house to house of meat previously ordered from the shop. We believe that question was a mixed one of law and fact which could only be determined by the jury after proper instructions by the court. Had the defendant been a licensed liquor dealer, conducting his business in the manner described in some of the testimony, and indicted for selling liquor without license in various parts of the city, we cannot see how the trial court, under the decisions in this state, could have undertaken to declare, as a matter of law, that no sales had been made.

We conclude, therefore, that the ordinance was a valid one; that the mercantile tax paid by the defendant, for the business conducted at his shop, would not protect him for any violation of its provisions, and that whether he did violate the ordinance or did not became a mixed question of law and fact to be submitted to the jury.

No question is raised either in the record or the argument of counsel as to the right of the defendant, after conviction before the burgess and the imposition of a fine, to take an appeal to the court of common pleas. We have not therefore considered this question and express no opinion concerning it. We only notice it so that hereafter, when such a question may be properly before us, this case may not be considered as a precedent on that subject.

Judgment reversed and a venire facias de novo awarded.