## Borough of Temple v. General Baking Company

*Morgan D. Reinbold,* for plaintiff.

*Jonathan P. Batdorf* and *Slocum & Ferguson,* for defendant.

SHANAMAN, J., December 3, 1934.—The Borough of Temple, operating under The General Borough Act of May 4, 1927, P. L. 519, has an ordinance dated April 2, 1923, numbered "bill no. 4," and entitled: "An ordinance regulating sales by itinerants, hawkers, etc., and establishing license fees for the same, and providing penalties for violation of same."

Section 1 provides: "Butchers, bakers, fruit sellers, canvassers, peddlers, hawkers and all persons offering for sale their wares in the Borough of Temple . . . shall pay a license fee of $10 per annum, or $1 per day."

Section 2 exempts "milk venders, and farmers and truckers selling their own produce . . . from payment of any license fees."

Section 3 imposes fines for violations of the ordinance and, in default of payment thereof, a penalty of imprisoment. The above-recited clauses constitute the whole ordinance.

General Baking Company, the defendant, has resisted payment of the license fee, and the matter is before us on a case stated. The case stated sets forth

that the defendant is a corporation chartered under the laws of New York and engaged in the manufacture, sale, and distribution of bread and bakery products; that it is licensed to do business in Pennsylvania and has a bakery at Reading, Pa.; that defendant's employe, one James Haughney, in return for salary and commissions, represents it in the sale of its products in the Borough of Temple and delivers, every day except Sunday, bread and bakery products, all manufactured by defendant, over defendant's regular route to defendant's regular customers in Temple and the vicinity, and uses a motor vehicle owned and maintained by defendant to make the deliveries; that defendant has carried on this business for a long time; that all sales are made by said Haughney on defendant's behalf at retail, for the account and risk of defendant; that "some of his sales are made by order received in advance, but in general he fulfills the daily requirements of his regular customers"; that "he does not 'hawk' his goods by public outcry or in any other similar manner"; that the products are of the highest standard of purity and excellence and are manufactured under sanitary conditions in a plant which is subjected to strict regulations and inspection by Federal and State agencies.

"In our determination [upon a case stated], we are confined to the facts agreed upon, and no others. Whatever is not expressly and distinctly agreed upon and set forth as admitted must be taken not to exist": Shoener v. County of Schuylkill, 107 Pa. Superior Ct. 114, 116.

". . . a case stated should set forth . . . all conceivable relevant facts": Hebron et al. v. Magda, 280 Pa. 508, 510.

There is no allegation that Haughney ever solicits orders anywhere from old or new customers, that he ever sells to any but regular customers, that he ever sells from and in the street, that he ever canvasses new persons as prospective customers, or that his sales are ever made in the houses of the customers. The only clause bearing on the matter is that "some of his sales are made by order received in advance, but in general he fulfills the daily requirements of his regular customers." The use of the phrase "regular customers" may indicate that some of his orders are received in advance, either from new customers or for the extraordinary requirement of an old customer, but that most of his orders are the delivery of regular unchanging requirements in accordance with prior instructions of old customers. As far as appears from the case stated, his deliveries may all be based on telephone orders or old understandings with his customers. In deciding this case, we are, as shown above, limited to what is "expressly and distinctly agreed upon and set forth as admitted" in the case stated. On the case stated, we cannot find as a fact that he is either a peddler, a street seller, a hawker, or a house-to-house canvasser, because the record contains no facts to support such a finding.

"We do not think the court could properly declare, as a pure question of law, whether the transactions amounted to sales on the streets or whether they were but, as the defendant contended, deliveries on the street from house to house of meat previously ordered from the shop. We believe that question was a mixed one of law and fact which could only be determined by the jury after proper instructions by the court": Phœnixville Borough v. Eyrich, 42 Pa. Superior Ct. 241, 245.

The present case is on a case stated, where, as shown above, it is even more important to state clearly and fully the facts relied upon by the pleader.

In Commonwealth v. Abbotts Alderney Dairies, 62 Pa. Superior Ct. 451, the appellant was a dealer in milk, who purchased in quantity, pasteurized it, and resold it in bottles at retail to customers to whom delivery was made by appellant's employes driving appellant's vehicles. The question involved was whether

appellant was a dealer within the mercantile license law. The court said (p. 454) :

"That the appellant is a dealer cannot be successfully denied. 'A dealer in the popular and therefore in the statutory sense of the word is one who buys to sell again': Norris Bros. v. Com., 27 Pa. 494. It has fixed and permanent places of business, it is buying and selling merchandise and is, therefore, subject to a mercantile tax. It was the purpose of the statute to impose such tax on permanent dealers having a place of business within the county: Com. v. Amer. Tobacco Co., 173 Pa. 531. The assessment is not on the sales, however, but on the dealer. It is not important, therefore, whether those sales are actually made from the wagons sent out from the place of business or are made in the store. The drivers of wagons are not peddlers; they are the agents of the appellant distributing its goods in a way convenient for the seller and buyer; but the appellant is none the less a dealer in merchandise. The business has its direction and control in the central office; the merchandise is shipped therefrom and although a large proportion of the business is conducted in the familiar method employed in the sale of milk in towns and cities the operation is a commercial one conducted from a permanent place and in the application of the taxing law should properly be held to be a subject of taxation. In this view of the case it is not material whether the title to the quart of milk was transferred at the time the driver delivered the bottle or whether it was received by the purchaser at Chestnut street or Armat street."

In New Castle v. Cutler, 15 Pa. Superior Ct. 612, 625, the same court said:

"The leading primary idea of a hawker and peddler is that of an itinerant or traveling trader, who carries goods about, in order to sell them, and who actually sells them to purchasers, in contradistinction to a trader who has goods for sale and sells them in a fixed place of business."

"The peddler is a transient, with no fixed place of business, who seeks customers by invading their homes, and makes sales by persuading people to buy what they do not need, and who, by the time he is wanted to answer for his representations and engagements, is out of sight and out of reach of process": Commonwealth v. Gardner et al., 133 Pa. 284, 289.

In Commonwealth v. McKendry, 21 D. & C. 383, the facts included an admitted solicitation of new business from house to house. In Commonwealth v. Gardner et al., 133 Pa. 284, supra, North Wales Borough v. Brownback, 10 Pa. Superior Ct. 227, Commonwealth v. Pennisi, 84 Pa. Superior Ct. 439, and Warren Borough v. Geer, 117 Pa. 207, there was proved or admitted peddling or house-to-house canvassing.

That the borough has a general police power to regulate peddlers, hawkers, house-to-house canvassers, and street solicitors, by reasonable ordinances to that end, and for such purpose to exact a reasonable license fee is established by the authorities. See Warren Borough v. Geer, supra (house-to-house canvassing) ; Sayre Borough v. Phillips, 148 Pa. 482 (peddling or selling goods from house to house by sample or otherwise) ; Mechanicsburg Borough v. Koons, 18 Pa. Superior Ct. 131 (canvassing from house to house or on the public streets) ; Phœnixville Borough v. Eyrich, supra (selling or offering for sale upon the streets or from house to house) ; Chambersburg v. Porter, 82 Pa. Superior Ct. 421 (solicitation on the streets).

"The power to enact a statute or ordinance under the exercise of the police power necessarily embraces the power to impose a license fee or penalty to enforce the regulation. Without such power the purposes of the ordinance

would be defeated and its benefits would be lost to the community": Norristown Borough v. Puleo, 69 Pa. Superior Ct. 265, 267, 268.

Under its general powers, furthermore, the borough council is authorized

"To enact, revise, repeal, and amend such laws, rules, regulations and ordinances, not inconsistent with the laws of the Commonwealth, as it shall deem beneficial to the borough, and to provide for the enforcement of the same": Act of May 8, 1929, P. L. 1636, sec. 1, amending section 1006 of the General Borough Act.

The General Borough Act of May 4, 1927, P. L. 519, sec. 1202, par. xxvii, authorizes the corporate officers "To regulate markets and peddling", but since the case stated will not support a finding that defendant is a hawker, peddler, street solicitor, or house-to-house canvasser, the application of the ordinance to defendant must be found, if at all, in the word "bakers" or in the phrase "all persons offering for sale their wares". The borough has not, however, contended that the license requirement applies to all "bakers" or to "all persons offering for sale their wares in the Borough of Temple," as the ordinance reads; nor has the borough either alleged or argued that the ordinance was intended as a fiscal measure, in order to gain revenue for general purposes. The borough's sole contention is that the ordinance was intended as a police measure for the regulation of peddlers, hawkers, and canvassers, and is lawful for that reason.

Whether the meaning of the very broad and general language of this ordinance can be so restricted has not been argued before us. Without determining, therefore, the constitutionality of this ordinance, it is sufficient to say that the defendant has not been brought within it.

And now, to wit, December 3, 1934, judgment is entered for the defendant, with costs.