## City of Williamsport v. John Wenner, Appellant.

*Taxation—Classification—Municipalities—License or business tax—Act of May 23, 1889.*

Under clause 4, section 3, article 5, of the act of May 23, 1889, P. L. 287, giving to the councils of cities of the third class power to levy and collect for general revenue purposes a license tax not exceeding one hundred dollars upon merchants and others, councils may in the exercise of their discretion classify merchants or others according to the amount of their gross sales, and graduate the tax according to such sales.

A license tax empowered to be levied and collected by virtue of the act of May 23, 1889, P. L. 287, is a tax in a general sense, and is not levied under the police power of the city.

Argued March 22, 1895.    Appeal, No. 223, Jan. T., 1895, by plaintiff, from judgment of C. P. Lycoming Co., Dec. T., 1893, No. 548, for defendant, on trial by court without jury.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Appeal from judgment of alderman.    Tried by the court without a jury.

METZGER, P. J., filed the following opinion :

In this case we find the following facts :

1st.  That the city of Williamsport, in the county of Lycoming, was duly incorporated as a city by the act of the general assembly of Pennsylvania, approved January 16, 1866, as will appear by reference to Pamphlet Laws, page 1231.

2d.  That the said city of Williamsport, by proper ordinance, on the 3d day of January, 1876, duly accepted the provisions of the act of general assembly of Pennsylvania, approved May 23, 1874, commonly known as the Wallace Law, and thereby became a city of the third class.

3d.  That under the provisions of the act of assembly approved May 8, 1889 (Pamphlet Laws, page 133), said city of Williamsport is now a city of the third class.

4th.  That on the third day of April, 1893, an ordinance was passed by select and common councils, and approved by the mayor of said city of Williamsport, entitled, " An ordinance providing for the levy and collection of an annual license tax on auctioneers, contractors, hawkers, peddlers, produce or merchandise venders, bankers, merchants, butchers, billiard and pool tables, drays, hacks, carriages, omnibuses, carts, wagons and other vehicles used in the city for hire or pay ; lumber dealers, street railway cars, livery stable keepers, real estate agents, insurance companies, telephone, water, steam heating, electric illuminating and gas companies.    Also providing for the assessment, reassessment, collection and exoneration of said license taxes.    Also fixing or prescribing penalties for violation of any of the provisions of this ordinance," which ordinance is published in full in pamphlet entitled, " Mayor's Message, Controllers'

Report, and Reports of Departments of the City of Williamsport, Pa., for the year 1892, also Certified Ordinances," beginning on page 47, and the portions thereof deemed material in this case read as follows :

Section 1. Be it ordained by the select and common councils of the city of Williamsport, that any person, firm or corporation, hereafter mentioned, doing business in the city of Williamsport, shall, before the first day of May annually, apply to the city treasurer for license for the period of one year; and the city treasurer shall issue said license to the applicant, upon payment of the amount fixed by this ordinance : Provided, that any license may be issued for the remaining part of a year upon payment of the pro rata of such license tax; no license, however, to be issued for a less time than three months.

Section 2. The annual license tax to be paid in advance to the city treasurer shall be as follows :

Clause 1. Every auctioneer shall pay an annual license tax of twenty-five dollars ($25.00). . . .

Clause 2. Every hawker or peddler, except disabled soldiers, shall pay twenty-five dollars ($25.00).

(From this clause to clause 18 certain kinds of business continue to be enumerated, on which a fixed sum is assessed.)

Clause 18 is as follows: Merchants of all kinds, druggists, grocers, confectioners, butchers, saddle and harness dealers, book-sellers, stationers, jewelers and furniture dealers, produce or merchandise venders, persons selling or leasing goods upon installment, shall be, and they are hereby classified and required to pay annually to the city treasurer for the use of the city for their respective licenses as follows :

Those whose annual sales do not exceed $1,000 shall constitute the first class and shall pay one dollar ($1.00).

Those whose sales are over $1,000 and do not exceed $5,000, shall constitute the second class and shall pay five dollars ($5.00).

Those whose sales are over $5,000 and do not exceed $10,000, shall constitute the third class and shall pay ten dollars ($10.00).

Those whose sales are over $10,000 and do not exceed $20,000, shall constitute the fourth class and shall pay twenty dollars ($20.00).

Those whose sales are over $20,000 and do not exceed

$30,000, shall constitute the fifth class and shall pay thirty dollars ($30.00).

Those whose sales are over $30,000 and do not exceed $40,000, shall constitute the sixth class and shall pay forty dollars ($40.00).

Those whose sales are over $40,000 and do not exceed $50,000, shall constitute the seventh class and shall pay fifty dollars ($50.00).

Those whose sales are over $50,000 and do not exceed $75,000, shall constitute the eighth class and shall pay seventy-five dollars ($75.00).

Those whose sales exceed $75,000 shall constitute the ninth class, and shall pay one hundred dollars ($100.00).

Section 3. That for the purpose of ascertaining to what class any person liable to pay a license tax under the provisions of this ordinance may belong, the assessment and classification shall be made by the city assessors between the first and fifteenth day of April of each year, in compliance with the terms of this ordinance : Provided, That should the city assessors neglect to assess any person or persons following any business named in this ordinance, the city treasurer shall add their names to the proper class, and collect the amount thereof as in other cases.

Section 5. It shall be the duty of the city treasurer to notify all persons subject to the payment of license taxes as provided by this ordinance, on or before the first day of May in each year, when said license is payable and the amount due from them ; and if the same is not paid within three months, he shall place the same in the hands of a collector, to be by him appointed, for collection, who shall give bonds in the amount of the same, with sureties to be approved by councils. Said collector shall immediately proceed to collect the same, and shall make return and pay over to the city treasurer all amounts collected by him within thirty days from the time the same shall be placed in in his hands, and shall receive for his compensation five per cent of the amount thus collected.

All licenses uncollected by said collector, after the expiration of said thirty days, shall be immediately turned over by him to the city solicitor for collection, who shall immediately proceed to collect the same.

The city treasurer shall enter upon the city license register the date of giving the notice required by this section and the manner of the same.

Section 6. Any person or persons refusing or neglecting to apply for license and pay the tax required by this ordinance, shall be compelled by legal process to pay the same, with interest and costs, and be subject to the payment of a penalty of not less than ten dollars ($10.00), nor more than one hundred dollars ($100.00), to be recovered as provided by law.

Section 8. Any person or persons who shall have been assessed with a license tax, under this ordinance, and claim that they are not liable for the payment of the same, or that the amount with which they have been assessed is incorrect, can make an affidavit setting forth the facts of the case before the city controller, which affidavit shall be filed with the city treasurer, who shall report the same to the councils before he places the claims in the hands of a collector for collection, whereupon councils shall consider the same, and if they shall decide that the party assessed is not liable, or that the assessment is not correct, they shall direct the city treasurer to strike the name of such person or persons from the city license register or correct the assessment, as the case may require : Provided, such affidavit is filed with the treasurer within fifteen days after the receipt of the notice of the tax.

5th. That John Wenner, the defendant in this case, is a grocer, and was engaged in the business of keeping a grocery store in the city of Williamsport in and during the year 1893, and was assessed in pursuance of said ordinance, in said year, with the sum of twenty dollars ($20.00), as a grocer, belonging to the class designated in said ordinance as the fourth class.

6th. That the city treasurer of the city of Williamsport duly notified the said John Wenner, on or before the first day of May, 1893, of said assessment and the amount due from him as required by section five of said ordinance. That the said John Wenner did not pay the same within the time prescribed by said ordinance and the same was placed in the hands of a collector, who not having collected the same after the expiration of thirty days, turned the same over to the city solicitor, who instituted legal proceedings to enforce the payment of the same.

7th. That the city treasurer entered upon the city license

register the date of the giving of the notice required by said section five of said ordinance, and the manner of the same.

8th. That the city of Williamsport on its part complied with all the requisites to be complied with on its part by virtue of said ordinance, and that the said defendant has not paid the said license tax.

The ordinance referred to, by virtue of which the assessment in this case was made, is claimed by the plaintiff to have been passed in pursuance of clause 4 of section 3, article 5, of the act of 1889, P. L. 287, which reads as follows: " To levy and collect for general revenue purposes a license tax not exceeding one hundred dollars ($100.00) each, annually on all auctioneers, contractors, druggists, hawkers, peddlers, produce or merchandise venders, bankers, brokers, pawn-brokers, merchants of all kinds, persons selling or leasing goods upon installment, grocers, confectioners, butchers, restaurants, bowling alleys, billiard tables, and other gaming tables, drays, hacks, carriages, omnibuses, carts, wagons, street railway cars and other vehicles used in the city for hire or pay; lumber dealers, including commission men, and all persons who make a business of buying lumber at wholesale, or retail furniture dealers, saddle or harness dealers, stationers, jewelers, livery or boarding stable keepers, real estate agents, agents of fire, life or other insurance companies, market house companies, express companies or agencies, telegraph, telephone, steam heating, gas, natural gas, water, electric light or power companies or agencies, or individuals furnishing communication, light, heat or power by any of the means enumerated, and to regulate the collection of the same."

The power of the city councils to levy and collect a license tax from the defendant is not disputed, but it is alleged on the part of the defendant, that the ordinance in pursuance of which the assessment in controversy was made is illegal and invalid, by reason of the classification made therein. It is true, as contended, that councils of cities or municipal authorities possess no powers except those which are expressly given them by law, or those which are necessarily implied from their charters or from some statute. Counties, cities and towns are municipal corporations, created by the authority of the legislature, and they derive all their powers from the source of their creation, except where the constitution of the state otherwise provides.

" They have no inherent jurisdiction to make laws or adopt governmental regulations, nor can they exercise any other powers in that regard than such as are expressly or impliedly derived from their charters or other statutes of the state." Laramie Co. v. Albany Co., 2 Otto, 307.

The power of the legislature to delegate to a municipality its power to tax and its power to classify is not disputed by the counsel, but it is contended that no such power is delegated by the act of 1889. It is argued that the clause of the act of 1889, upon which the city relies in this case, had been given a different construction by our Supreme Court than that which was placed upon a similar clause in the act of 1874; and the case of Oil City v. Oil City Trust Company, 151 Pa. 454, is cited to sustain this position. After a careful examination of this subject, I agree with the learned counsel that a different construction has been given to this clause in the act of 1889 by our Supreme Court from that put upon a similar clause in the act of 1874. It is settled that a license tax empowered to be levied and collected by virtue of the act of 1889 is a tax in a general sense, and is not levied under the police power of the city. From this it is argued that the decisions heretofore delivered by the court, sustaining the classification of subjects similar to those in controversy, have no application. That, under the act of 1874, the license tax was an exercise of the police power of the city. It is true there is quite a difference between the power of taxation and the exercise of the police power. Burroughs, in his work on taxation, page 396, section 122, speaking of license fees or taxes levied under the police power, says: " The provisions for equality and uniformity do not apply to this species of tax, but should they be held to apply, the only effect should be that each class of pursuits should be taxed alike." Where, however, a license tax is a tax in a general sense, there must be under the provisions of our constitution " uniformity upon the same class of subjects within the territorial limits of the authority levying the tax, and they must be levied and collected under general laws:" Section 1, article 9, of the constitution of the state of Pennsylvania. This, however, in my judgment, does not destroy the effect of the reasoning in the cases heretofore decided. The court in the case of the City of Allentown v. Gross, 132 Pa. 322, in passing upon

the question of the right to classify by ordinance in pursuance of the act of 1874, seems to have had in view the question of uniformity of such assessment. He says in his opinion : "It is argued here that the grading of the license tax according to the amount of annual gross sales is illegal, because it is not uniform ; that all liquor sellers should be required to pay the same amount, and that by making the amount of their sales the basis it is, in effect, an income tax. But this is not the taxing of the person of the liquor seller, but of his property estimated by the volume of the annual sales. A tax of this character, graded in the same way for state purposes, has been levied and collected for many years, . . . . being taxation of a thing and not of a person, the classification makes uniformity the same as in the case of money at interest, and real estate. The man who has two thousand dollars at interest pays twice as much as he who has but one thousand dollars," etc. The same may be said of the case of Hadtner et al. *v.* The City of Williamsport, 15 W. N. C. 138, in which the learned court held that under article 9, section 1, of the constitution of Pennsylvania, taxes need not be uniform upon all subjects within the territorial limits, but only upon the same class of subjects. An ordinance, therefore, which imposes license taxes varying in amounts upon different kinds of industries is not void because of want of uniformity.

We can really see no materiality in the controversy whether this license tax is a tax in a general sense or is under the police powers, because, after all, if the authority claimed by the plaintiff here is conferred by the act of 1889, then it matters little whether you call it a tax or a license. That the legislature itself may classify the subjects of taxation does not admit of any doubt, and if this be so, does not the legislature, when it confers the power of taxation of certain subjects to a municipality thereby confer all the power which it itself has over the subject, and if it has the right to classify why should not the municipality have the same right? The power of classification is inherent in the power of taxation, and, in my judgment, the only limitation upon this power is that such classification be made in such manner as to produce as great uniformity and equality of taxation as possible. By the act of 1889 the legislature vested in councils the discretion to tax the subjects named in

the act in any amount not exceeding one hundred dollars. Is it not clearly implied that in the exercise of this discretion they would have the right to classify any or all the subjects of taxation named according to the amount of their gross sales? I will go further and affirm that, in my judgment, if the subjects named were taxed without regard to the amount of their sales that it would be most unjust and inequitable, and such assessment could not produce uniformity. The very fact that it is not a license but a tax makes it necessary that the municipal authorities should have the discretion to classify the subjects and graduate the assessment on some basis, particularly as regards some of the subjects named in the act, in order to produce uniformity and equality.

If it were a license merely, then it might be proper that every man should pay alike for the privilege of doing a certain business, but to levy a tax upon the same principle is to say that a dealer whose sales amount to but two or three thousand dollars a year shall pay the same tax as he whose sales amount to two hundred thousand dollars. The inequality of such a mode of assessment is so apparent that it needs no argument to prove it. The case of Banger's Appeal, 109 Pa. 79, is not at all in conflict with this position. That was an attempt to classify the same occupation according to the earnings of individuals. It was very properly ruled that such a tax would be an income tax, measured by the amount of the earnings of the party, but even in that case the right to classify the tax upon property is, at least impliedly, recognized. The tax in controversy is clearly not an income tax in any sense, but it is a tax of the defendant's property estimated by the volume of his annual sales. I might add, that to my mind it is evident that the power to classify is delegated by the clause of the act of 1889 in controversy, from the fact that the legislature in conferring the power to impose a license tax did not regulate the levy and collection thereof, but left the mode of assessment and manner of collection to the discretion of the municipality, fixing only the maximum which could be levied on any one subject.

We have no doubt, therefore, of the power of the municipal authorities to classify the subjects of taxation as in this case, and unless the classification adopted is manifestly unjust and

unreasonable it is not the province of the court to say that they might have adopted a more equitable mode of assessing taxes.

" The power to impose taxes, the selection of subjects for classification and the method of collection are purely legislative matters : " Commonwealth v. Canal Co., 123 Pa. 620 ; Commonwealth v. Brewing Co., 145 Pa. 87 ; Commonwealth v. Oil Co., 157 Pa. 516.

But in view of the fact that the classification provided for by the ordinance in controversy so closely follows that adopted by the state herself in the act of May 14, 1841, and which has been in force ever since, how can we say that the classification in this case is unreasonable and inequitable ? There is, of course, no such thing as a perfect uniformity and equality in taxation. All that can be claimed is that it should approximate uniformity and equality as nearly as possible. But it is sufficient that the municipality had the power to classify as they did in this case, and that there is nothing in the ordinance itself or in any evidence in this case to indicate that there was any abuse of their discretionary power.

But it is further urged by counsel in this case that if they had the right to classify and did classify some of the subjects named in the act, they were bound to classify all subjects named therein. We can see nothing in this position. As all subjects of taxation cannot be classified by the same standard, so there are subjects which do not admit of classification at all. Classification depends not only upon the physical nature or position of the subjects selected, but upon a variety of considerations. It may be wholly impracticable to classify certain subjects, and to attempt to do so might destroy uniformity of taxation instead of producing it, and the municipal authorities ought not to attempt such classification in such cases or even where the result would be doubtful. They must exercise a sound discretion on this subject, and where they do so courts will not attempt to interfere with their action. Because municipal authorities cannot classify all subjects of taxation it does not follow that they cannot classify any.

But we cannot see how the defendant in this case, whose business constitutes one subject of taxation, can complain because some other subject of taxation is not graded or classified in the same manner that his business is. He can certainly not

complain that this is a violation of any provision of the constitution, because the constitution only requires that the tax upon the same class of subjects be uniform. The legislature itself in this case has made the classification of subjects, and the defendant belongs to a different class from that to which the auctioneer or the peddler belongs. Some other mere technical questions are raised by the bill of particulars filed by the defendant in this case, which have not been commented upon by counsel in their argument, and which, I think, are not of any consequence in this case, and therefore will not take up the time to discuss them.

Thereupon, now, to wit, July 14, 1893, it is ordered that judgment be entered in favor of the plaintiff in this case in the sum of $20.00, subject, nevertheless, to exceptions which may be filed thereto as provided by act of assembly and the agreement of counsel in this case.

*Error assigned* was entry of judgment for plaintiff.

*J. A. Beeber*, for appellant.—The license tax sought to be collected is a tax in the general sense, and is not levied under the police powers of the city: Oil City v. Oil City Trust Co., 151 Pa. 454.

A municipality is not delegated, and cannot exercise any power in the levying and collection of such a tax as is here authorized, beyond what is clearly given by the said act of assembly of 1889: Dillon on Municipal Corporations, sec. 89; Whelen's App., 108 Pa. 162; Burrows on Taxation, chap. 19, p. 370; Laramie County v. Albany County, 92 U. S. 307; Butler's App., 73 Pa. 448.

This method of fixing the amount of license tax is not prescribed in the act of assembly, it is in conflict with the classification made by the act, and is nothing more or less than levying an income tax, which municipalities have no power to do: Banger's App., 109 Pa. 79.

As the authority to levy taxes or to make local assessments does not exist unless legislatively conferred, so it can be exercised no further than is clearly authorized: 2 Dillon on Municipal Corporations, sec. 769.

The question of whether a classification is unreasonable and

unjust is one of law and for the courts to decide: 1 Dillon on Municipal Corporations, sec. 319; Kneedler v. Norristown Borough, 100 Pa. 369; Ayars' App., 122 Pa. 266.

*W. D. Crocker,* city solicitor, for appellee.—All acts of assembly upon the subject of taxation are to have an enlarged and liberal construction: Delaney v. Gault, 30 Pa. 66; Savings Fund v. Yard, 9 Pa. 360; Berks Co. v. Bertolet, 13 Pa. 522; Duffy v. Phila., 42 Pa. 192.

The legislature may confer the taxing power upon municipal corporations to any extent which it deems expedient: Beach on Pub. Corp. sec. 1, 424; Cooley on Taxation, 51.

The power of classification or appointment is inherent in the power of taxation: Cooley on Taxation, 175; 25 Am. & Eng. Ency. of Law, 183.

The power of apportionment or classification is a legislative and not a judicial function, unless so exercised as to be void for unreasonableness or lack of uniformity: Com. v. Canal Co., 123 Pa. 620.

Municipalities are really but a branch of the government of the state, and whatever powers of taxation the legislature possesses they may lawfully grant and delegate to such bodies: Durach's App., 62 Pa. 491; Butler's App., 73 Pa. 448.

Classification is not necessarily based upon any essential difference in the nature, or indeed in the condition of the various subjects, but upon a variety of considerations: Com. v. Canal Co., 123 Pa. 594.

In order to make it equal and fair, apportionment is a necessary element in all taxation: Cooley on Taxation, 175.

Classification may be made, and is constantly made, in various ways; one method being applicable to real property, another to personal property, another to corporate property, and still another to trades and occupations: Com. v. Canal Co., 123 Pa. 620; Com. v. Brewing Co., 145 Pa. 83; Com. v. National Oil Co., 157 Pa. 516.

PER CURIAM, January 6, 1896:

This suit was brought to recover the amount of a license or business tax assessed by the city of Williamsport against the defendant, a merchant doing business therein. By consent of

parties the right of trial by jury was waived and the decision of the case was submitted to the court. In a painstaking and exhaustive opinion, the learned president of the common pleas has clearly presented his findings of fact and conclusions of law drawn therefrom. A careful examination of the record has failed to convince us that there is any error in the judgment, or in the proceedings leading up thereto. We find nothing therein that would justify us in sustaining any of the assignments of error, nor do we think that either of them requires discussion. To have held that the ordinance, under which the tax in controversy was assessed, is an unwarranted exercise of the taxing power conferred by the act of May 23, 1889, would have been error.

Judgment affirmed.