# Postal Telegraph Cable Company, Appellant, *v*. Altoona.

*Taxation—License tax—Telegraph and telephone companies—Act of April 17, 1905, P. L. 183.*

1. The Act of April 17, 1905, P. L. 183, entitled, "An Act providing for the determination by the Court of Common Pleas of the proper county of all disputes as to the reasonableness of the amount of license fees between municipal corporations and telegraph, telephone, or light or power companies," does not afford a remedy against a wholly illegal tax levied by a municipality under the provisions of an ordinance which the municipality had no authority to enact, and no lawful power to enforce.

2. In a proceeding under the Act of April 17, 1905, P. L. 183, by a telegraph company to determine the amount of annual license tax or fee which should be paid to a city in order to properly compensate it for the necessary costs of the services of inspection, where the court finds from competent evidence that the license tax or fee imposed by the ordinance is neither unreasonable nor excessive, it should not dismiss the petition, but should enter a decree fixing the rate that should be paid until there should be such change in conditions as will warrant alteration of the decree by the court itself.

Argued April 22, 1914. Appeal, No. 60, Oct. T., 1912, by plaintiff, from order of C. P. Blair Co., Oct. T., 1908, No. 5, dismissing petition to determine fee for license tax in case of Postal Telegraph Cable Company v. City of Altoona. Before RICE, P. J., HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Decree modified.

Petition to determine the reasonableness of license tax.

REED, P. J., specially presiding, filed the following opinion:

March 12, 1912. This case and the case of the American Telegraph & Telephone Company were heard together, and, for the reasons stated in the above, this day filed in the last-mentioned case at No. 96, June Term,

1909, the prayer of this petition is refused, and the petition dismissed at its cost.

·The opinion of the court in the case of the American Telegraph & Telephone Company, referred to in the above opinion, was as follows:

REED, P. J., 54th Judicial District, specially presiding: The city of Altoona in 1902 passed an ordinance, comprising thirty-six sections, having for its principal object the levy and collection of an annual license tax upon all "trades, businesses, callings, occupations, matters and things" conducted within the city. A large number of subjects upon which this license tax is imposed are designated, and sec. 11 provides, inter alia, that "every telegraph, telephone, steam heating, electric light or power company, agency or individual, furnishing communication, light, heat or power, by any of the means enumerated, and using any of the streets, avenues or alleys of the city for the purpose of erecting poles, shall pay for such privilege the annual sum of fifty cents for each and every pole so erected. In lieu thereof such company, agency or person may elect to pay the sum of $100 per annum: provided, however, that when one or more companies occupy the same pole, each company shall be liable to the provisions of this ordinance." The ordinance contains a provision that it shall go into effect on the first Monday of April, 1902, and shall be known as the "License Tax Ordinance;" also that the tax imposed shall be due and payable to the city treasurer the first day of June each year. It creates the office of a "license tax officer;" prescribes the duties of this officer, and fixes his salary. The ordinance was passed pursuant to the power vested in the city by clause 4, sec. 3, of art. 5 of the act of 1889, as amended by the Act of 1901, P. L. 228, "to levy and collect a license tax, not exceeding $100 annually, on . . . . telegraph and telephone companies, etc."

By virtue of this ordinance the city levied an annual license tax upon the American Telegraph & Telephone

Company of the city of New York, which was and is doing business in the city of Altoona, and has its wires strung on 278 poles within the limits of said city. For several years the company elected to pay the annual license tax of $100 imposed upon it by this ordinance, but since June 1, 1908, has neglected and refused to pay the same. When the license tax officer demanded payment for the year beginning June 1, 1909, and threatened to issue a warrant for the collection of the tax, the company presented its petition to the court alleging (a) that the ordinance under which the tax was levied was a revenue ordinance and the city had no right to collect a license tax thereunder, and (b) that if the ordinance could be construed to be one fixing a license fee to compensate the city for its services for inspecting and regulating the poles and wires of the company within the city limits it was unreasonable in that it imposed a fee in excess of what was required for that purpose. It concluded its petition with a prayer that the court, under the Act of April 17, 1905, P. L. 183, "determine the amount of the annual license or fee which should be paid by it to the city of Altoona to compensate it for the necessary expenses incurred and services performed in the annual inspection of its poles and wires." The court, July 28, 1909, granted a citation on the city requiring it to appear and answer this petition, and ordered all proceedings to collect the said license tax stayed pending the determination of the amount thereof by the court as prayed for. In compliance with this citation the city filed its answer, September 7, 1909, alleging plenary power to pass the ordinance in question and to collect from the petitioner the license tax thereby imposed upon it, and further that in any aspect of the case it was a reasonable license fee which should be paid by the petitioner to properly compensate the city for the necessary cost of services performed by it in the inspection and supervision of the petitioner's poles and wires within the limits of the city,

and praying that the petition be dismissed at the costs of the petitioner. The testimony taken on the issues joined between the parties was filed January 27, 1910. The oral testimony relates wholly to the question of what it costs the city each year to inspect and supervise or regulate the petitioner's poles and wires. If the case turns on the question of whether an annual license fee of $100 exceeds the amount necessary to properly compensate the city for the cost of the services performed and to be performed by it for the inspection and regulation of the petitioner's poles and wires within the city limits, then I find as a fact, under the evidence presented, that it does not, and thereupon fix this amount as the maximum sum to be charged by the city as a license fee against the petitioner, which sum is equivalent to about thirty-five cents per pole including the wires strung thereon. But in my opinion the case does not turn on this question.

The ordinance hereinbefore referred to is not challenged or questioned except on the grounds that it is an ordinance for general revenue purposes which the city had no power to pass or authority to enforce, and that the license fee fixed by it is unreasonable. The manifest purpose of the ordinance is to levy and collect an annual license tax for the privilege of doing business within the municipal limits, and not merely to fix an annual license fee to cover the costs of inspecting and supervising the petitioner's poles and wires strung thereon within its limits. The city is expressly authorized by the amendatory Act of May 16, 1901, P. L. 224 (see sec. 6, amending clause 4 of sec. 3, art. 5, of the act of 1889) to collect such tax. If it is a tax in the general sense, and it unquestionably is, the power of the legislature to authorize its imposition and collection cannot be doubted. The act of 1889, as amended by the act of 1901, in express terms confers upon cities of the third class, and Altoona is admittedly a city of this class, the power "to levy and collect a license tax, not exceeding one

hundred dollars, annually," on the subjects enumerated including telephone and telegraph companies. The ordinance complained of was passed in pursuance of this delegated authority. The power thus conferred upon cities of the third class is not, in my opinion, in any way affected or curtailed by the Act of April 17, 1905, P. L. 183, entitled "an act providing for the determination by the court of common pleas of the proper county of all disputes as to the reasonableness of the amount of license fees between municipal corporations and telegraph, telephone, or light, or power companies." This last-mentioned act provides for a reasonable sum to be paid by telegraph, telephone, or light, or power companies, occupying the highways of a municipality with their poles, wires, conduits or cables to cover the cost of inspecting and regulating the same by the municipality under its police powers. Both acts are operative. There is no conflict between them, and no reason why each may not be proceeded under for the accomplishment of its specific purpose: Oil City v. Oil City Trust Co., 151 Pa. 454; Williamsport v. Wenner, 172 Pa. 173; Johnstown v. Central Dist., etc., Co., 23 Pa. Superior Ct. 381; Harrisburg City v. Penna. Telephone Co., 15 Pa. C. C. Rep. 518. The one act provides for the levying of a franchise tax, the other act provides for determining the reasonableness of a license fee imposed for a specific purpose by the municipality under its police power. For levying a tax for revenue purposes the municipality must have an express legislative authority, but no such authority is required for fixing a license fee under its police power. It is the control and regulation of this inherent police power of the municipality that is vested in the court by the act of 1905. Assuming, however, that the legislature intended by the act of 1901, amending sec. 6 of the act of 1889, to place the levying of a license tax on the subjects therein enumerated under the police power of the municipality, and that the same is now subject to the supervision of the court under the

act of 1905 regarding the reasonableness of the fee ordained, and further assuming that the license tax levied by authority of the act of 1901 is a license fee for the inspection and regulation of the poles and wires of telegraph and telephone companies, and not a franchise tax, then, as already indicated, my conclusion is that the license fee fixed in this case is a reasonable sum for this specific purpose. It is to be observed, however, that if the acts of 1901 and 1905 are in pari materia and are to be construed together, then no municipality may fix a license fee in excess of $100 for the inspection and reg- ulation- of the poles, wires, conduits or cables of tele- graph, telephone, electric light or power companies or agencies, or individuals, furnishing communication, light or power, since the act of 1901 fixes the maximum license tax to be levied thereunder at this amount.

I am disposed to adhere to the view that the tax levied under the ordinance in this case is a tax in a general sense, that the city had the power to levy and collect the same under the ordinance passed pursuant to the act of 1889, as amended by the act of 1901, and that the court has no power to determine its reasonableness, under the act of 1905, on evidence of what it costs the city annually to inspect and regulate the poles and wires of the petitioner within the city limits.

And now, March 12, 1912, the prayer of the petition of the American Telegraph & Telephone Company is re- fused and said petition dismissed at its costs.

*Error assigned* was decree dismissing the petition.

*Frank R. Shattuck*, for appellant.

*Thomas C. Hare*, for appellee.

OPINION BY HEAD, J., July 15, 1914:

The somewhat confused state of the record, as we have it, makes it difficult to terminate this purely statu-

tory proceeding by the formal order or decree contemplated by the act of assembly. The special jurisdiction invoked by the appellant in beginning this proceeding and the nature and extent of the relief it sought are shown by the concluding paragraph of its petition which we quote: "Wherefore your petitioner presents this petition under the provisions of the Act of April 17, 1905 (P. L. 183) and prays that your Honorable Court shall determine the amount of annual license tax or fee which should be paid to the city of Altoona in order to properly compensate it for the necessary cost of the services performed and to issue a citation, etc."

If it be true that the city of Altoona is attempting to collect from the appellant a wholly illegal tax, levied under the provisions of an ordinance it had no authority to enact and no lawful power to enforce, it was clearly the right of the appellant, as it would be of any citizen, to resist the collection and payment of such tax. But that right is not conferred by the act of 1905 nor was it the intention of that statute to supply a remedy to make such right available. Both the right and the remedy existed long before the statute was thought of. If therefore the appellant's petition had contained nothing more than the averments that the license tax levied was a tax upon its business generally; that as to a portion of the business thus sought to be taxed, it was an instrument of interstate commerce; that as to another portion it was but an instrument of government; and that it was not competent for the state or its agent, the city, to impose a tax on the business of a corporation so engaged, without exempting from the operation of it those portions of its business above referred to, then its petition to the court of common pleas might well be dismissed. If we agree with the learned counsel for appellant that the ordinance of the city here in question sought to impose such a tax on a subject not within the reach of the taxing power of a single state, it has presented no case under the

act of 1905 and its petition was rightfully dismissed. By the action of the court below in so ordering, the appellant was not aggrieved and its appeal to this court would be without merit.

But the petition further asserts that the city of Altoona had enacted an ordinance which, in so far as it affected this appellant, provided as follows: "Every telegraph company using any of the streets, avenues or alleys of the city for the purpose of erecting poles shall pay for such privilege the annual sum of fifty cents for each and every pole so erected. In lieu thereof such company may elect to pay the sum of $100 per annum; provided however that when one or more companies occupy the same pole, each company shall be liable to the provisions of this ordinance." It averred the petitioner maintained twenty-two poles in said city and that a demand had been made upon it by the city for the payment of a license tax of $100; that said sum would be grossly in excess of any sum reasonably required to indemnify the city against the cost of such inspection and supervision of the poles and wires of the petitioner as the just exercise of its police power would render necessary. It therefore, as we have shown by the quotation we have made, invoked the special power conferred by the statute on the court of common pleas to settle the dispute between it and the city as to the reasonable amount of such license fee. These averments clearly grounded the jurisdiction of the court and opened the way for the entry of such an order or decree as the statute plainly contemplated. The petition does not state how many of the poles of other companies the appellant uses, and we have no distinct finding of fact on that subject. This results doubtless from the fact that a similar petition had been filed by another corporation, to wit, the American Telegraph & Telephone Company. Both of the cases were heard together by the same judge and an opinion was filed, in the case last referred to, setting forth at

length the reasons on which the learned judge based the conclusion he reached. In the case of this appellant we have nothing but an order stating that for the reasons given in the opinion referred to "the prayer of this petition is refused and the petition dismissed at its cost."

The testimony of some of the employees of the appellant indicates it owns or controls forty-two poles in the city of Altoona, and there is further evidence that with its wires it used to a considerable extent poles of other companies. The record shows no dispute between the city and the company as to the number of poles which would be subject to the provisions of the ordinance if the city had the right to collect a license tax or fee on that basis. As we have shown, the ordinance was framed in the alternative, and the city could not lawfully demand the lump sum of $100 from a company whose poles aggregated less than two hundred if the company chose to pay at the rate of fifty cents per pole. In the case in which the opinion was filed it was found by the court, or agreed on by the parties, the company had its wires strung on 278 poles within the city limits. The lump sum of $100 in such case would amount to a license fee per pole, including the wires, of about thirty-five cents, and the court further finds that this sum would not exceed what would be necessary to properly compensate the city for such services as it ought to perform in the discharge of its duties to the citizens. We may and ought to assume, as this case is presented, there was a finding similar in substance in the present case because no question of that kind is raised by the appellant either in its printed brief or argument at bar. There was thus a secure foundation for the entry of a decree by the court below that the license tax or fee imposed by the ordinance was neither unreasonable nor excessive and that the company should pay at the rate fixed until there should be such change in conditions as would warrant an alteration of the order by the court itself.

The statute does not of course prescribe the form in which such an order must be made, and although the learned judge below reached his conclusion from considerations we have not thought it necessary to discuss, nevertheless his refusal to interfere with the license fees imposed by the ordinance is, in substance and effect, a determination that the rates fixed by the ordinance are reasonable and the company must continue to pay at those rates. We will therefore direct that the record be remitted to the court below with instruction to so modify the decree as to bring it into conformity with this opinion, and, thus modified, the order or decree is affirmed. The costs of this appeal to be paid by the appellant.