HOOTEN *v.* CARSON *et al.*

(*Nashville*, December Term, 1947.)

Opinion filed February 28, 1948.

JORDAN STOKES, III, of Nashville, for appellant.

ROY H. BEELER, Attorney-General, WILLIAM F. BARRY, Solicitor-General, and ALLISON B. HUMPHREYS, JR., and HARRY PHILLIPS, Assistant Attorneys-General, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This case involves the constitutionality of Chapter 3, Public Acts of 1947, commonly known as the "Retail Sales Tax" statute.

The appellant purchased certain articles of food at a retail store in Nashville, one of the H. G. Hill Stores, upon which the retailer demanded, and which appellant paid under protest, the tax which the statute exacted. Suit was instituted to recover the amount of the tax so paid, the basis of the right of recovery being that the statute was unconstitutional. Numerous grounds of invalidity are set forth in the bill, to which specific reference will be made later in this opinion.

A demurrer was filed to the bill, which challenged every ground of recovery. The Chancellor sustained it and complainant appealed and has assigned errors.

We will discuss the several grounds of alleged unconstitutionality of the statute as set forth in the bill rather than copying here the several assignments of error.

The first contention made by appellant is that the tax is illegal because (a) "if the tax is a privilege it is unlawful because complainant exercised no taxable privilege in buying food to eat in order that he may continue to live; that he was simply pursuing his inalienable right

to exist''; (b) ''if it is an *ad valorem*, it is not equal and uniform as required by Article 2, section 28 of the Constitution of Tennessee.''

█ In response to the foregoing the State says that the tax in question is a privilege tax and not a property or *ad valorem* tax. The issue thus presented must be decided in favor of the State and against appellant.

The caption of the Act expressly declares that it provides for the ''levy and . . . collection of additional privilege taxes.'' Section 3 provides ''that every person . . . who engages in the business of selling tangible personal property'' is exercising a taxable privilege, etc. Tax statutes similar to the one here assailed have been enacted in one form or another in 28 States of the United States. We find, without exception, that the courts have uniformly held them to have imposed an excise or privilege tax and not a tax upon property. See Annotations in 89 A. L. R., pp. 1432 to 1442; 110 A. L. R., pp. 1485 to 1486. In the last annotation it is said: ''In recent decisions the so-called 'sales tax' has been regarded as an excise or privilege tax, and not a property tax.'' See also *Western Lithograph Co.* v. *State Board of Equalization*, 11 Cal. (2d) 156, 78 P. (2d) 731, 117 A. L. R. 838, 846; 128 A. L. R. 894, 895.

In addition to the foregoing authority counsel for the State have cited cases from sixteen separate jurisdictions and also the following decisions by this Court: *Memphis Dock, etc.* v. *Fort*, 170 Tenn. 109, 92 S. W. (2d) 408; *General Securities Co.* v. *Williams*, 161 Tenn. 50, 29 S. W. (2d) 662; *Bank of Commerce & Trust Co.* v. *Senter*, 149 Tenn. 569, 260 S. W. 144; *State* v. *Crawford*, 39 Tenn. 460, 461.

Holding as we do that the statute levies a privilege tax upon retail sales, we deem it unnecessary to discuss the question that if it is an *ad valorem* tax it is unequal, etc.

■ The power to tax is inherent in the sovereign since it is necessary to the perpetuity of the government. Our Constitution, Art. 2, sec. 28, expressly provides that "the Legislature shall have power to tax Merchants, Peddlers, and privileges, in such manner as they may from time to time direct." See *Jenkins* v. *Ewin*, 55 Tenn. 456; *Railroad* v. *Harris*, 99 Tenn. 684, 709, 43 S. W. 115, 53 L. R. A. 921; *Trentham* v. *Moore*, 111 Tenn. 346, 353, 76 S. W. 904.

■ The power to tax privileges is not subject to any constitutional limitation except that the tax levied must not be arbitrary, capricious or wholly unreasonable. *Friedman* v. *Mathes*, 55 Tenn. 488, 489; *American Steel & Wire Co.* v. *Speed*, 110 Tenn. 524, 547, 75 S. W. 1037, 100 Am. St. Rep. 814; *Jenkins* v. *Ewin, supra; Trentham* v. *Moore, supra*.

In *Kurth* v. *State*, 86 Tenn. 134, 136, 5 S. W. 593, 594, it was held: "A privilege is whatever the legislature choose to declare to be a privilege, and to tax as such."

To the same effect see *Edmonson* v. *Walker*, 137 Tenn. 569, 582, 195 S. W. 168; *Seven Springs Water Co.* v. *Kennedy*, 156 Tenn. 1, 5, 299 S. W. 792, 56 A. L. R. 496; *Foster & Creighton Co.* v. *Graham*, 154 Tenn. 412, 285 S. W. 570, 47 A. L. R. 971. Many other cases might be cited, but the foregoing are sufficient. They have been uniformly followed in later decisions. We refer expressly to one where the Court sustained a privilege tax upon automobiles used for pleasure. *Ogilvie* v. *Hailey*, 141 Tenn. 392, 397, 210 S. W. 645.

Counsel for the State have cited a well considered opinion from foreign jurisdiction (South Dakota) in which

the Court upheld a statute levying a sales tax upon "gross receipts." *State ex rel. Botkin* v. *Welsh*, 61 S. D. 593, 251 N. W. 189.

The main contention of appellant, challenging the validity of the statute, is that the tax is upon the consumer-buyer, and that this is not a privilege that may be taxed. Under Section 5 of the Act the tax is required to be collected from the consumer; that the amount must be added to the retail price of the article, etc. No retail dealer is permitted to advertise that the tax will not be collected. While the State concedes that the purchaser ultimately pays the tax, the Act expressly states that it is a privilege tax levied upon the merchant. The State can only enforce its claim for taxes solely against the merchant. All penalties for non-payment run against the retailer. It is therefore earnestly insisted that "the tax in question is a tax upon the retail seller."

We are convinced from an examination of a number of leading tax cases that this contention is correct. It is conceded by appellant's counsel that had the statute merely levied a tax upon sales, that the merchant could add the tax to the sale price and collect it without doing any violence to any constitutional right of the purchaser. Regardless of this admission, every one is conscious of the fact that taxes of every kind, levied upon any business, are passed on to the buying public. There is a strong and very just reason why the Legislature made it mandatory upon the seller to collect the tax from the purchaser. This express direction is found in many of the retail sales tax statutes. The courts, in discussing this provision, have held that it is a matter of reasonable regulation of trade practices. Thus in *Doby et al.* v. *State Tax Commission*, 234 Ala. 150, 174 So. 233, 237, the Su-

preme Court of Alabama, in dealing with the question, says: "The mandatory provision in this section is for the benefit of the seller, but more particularly for the protection of all retailers charged with the payment of this tax. The lawmakers deemed it unfair competition for the strong to absorb the tax and build up his trade at the expense of the weaker dealer who could not absorb it. So, the legal duty of the retailer, the taxpayer, is to pay the tax and also to collect a like amount from the purchaser. It is not a question of whether he should pay the tax, or, in the alternative collect the tax for the state." See also *Tanner* v. *State*, 28 Ala. App. 568, 190 So. 292; *Rice* v. *Allen*, 180 Miss. 659, 177 So. 763.

In the State of California there is a requirement in the sales tax statute that the seller collect the tax from the buyer. The Supreme Court of that State held that it was valid, holding that the tax is upon the privilege of transacting business. See also *Western Lithograph Co.* v. *State Board*, 78 P. (2d) 731; *De Aryan* v. *Akers*, 12 Cal. (2d) 781, 87 P. (2d) 695.

No question is made but that the State may tax the privilege of selling food. We think the mere fact that the State passes the tax to the buyer as a matter of reasonable tax practice and regulation does not impair the power of the State to declare it a privilege and tax it as such. The argument is made by appellant that the right to purchase food is a natural right and that such rights are not subject to a tax. To this the State replies that if the right to buy is a natural right, the right to sell is equally so, because "there can be no purchase without a sale."

Regardless of whether the right to buy or sell is a natural right, we think the law is well settled that

the State in the exercise of its sovereign power may impose a privilege tax upon any and all business transactions to the end that the general public be protected from unfair trade practices, and where the tax is not capricious or unreasonable.

In *Wiseman* v. *Phillips*, 191 Ark. 63, 84 S. W. (2d) 91, it was contended that one had an inalienable right to acquire possession of property. It was there held while the right might exist it was subordinate to the State's right to tax it as a privilege.

It would seem that the right of one to sell water from his own spring should be regarded as a nontaxable right, but in *Seven Springs Water Co.* v. *Kennedy*, 156 Tenn. 1, 5, 299 S. W. 792, 56 A. L. R. 496, this Court held that it was within the power of the Legislature to tax it as a privilege.

█ It is next insisted by appellant that he has no property other than a pension from the Federal Government and the money collected from him in the form of a sales tax is not taxable by the State. Our response to this insistence is that the State levies no tax upon money regardless of the source from which it came. The tax is upon the privilege of making retail sales.

Moreover, it was held in *State of Tennessee* v. *Blair*, 165 Tenn. 519, 57 S. W. (2d) 455 (later affirmed in 290 U. S. 354, 54 S. Ct. 138, 78 L. Ed. 358), that property purchased by a soldier with exempt funds was liable for taxation.

█ The appellant raises the question that the effect of the Act is to abridge the freedom of contract, and violates Article 1, section 8 of the Constitution of Tennessee. This section provides: "That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges,

or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty, or property, but by the judgment of his peers or the law of the land.''

The contention is made that Section 5 (a) and (b) of the Act arbitrarily adds the tax to the price of the article resulting in the loss of the power to contract, and that there is no competitive market. We find no merit in this argument. This method of collecting privilege taxes is common in many jurisdictions. In Tennessee the seller of gasoline adds the tax and collects it upon every gallon sold. The United States Government resorts to the same method by requiring the seller to collect certain excise taxes upon luxury items.

In *DeAryan* v. *Akers, supra*, it was contended that it was beyond the power of Legislature to require the addition of the sales tax to the price charged the consumer. The statute was mandatory in this regard. But the Court rejected this contention, citing numerous authorities.

█ The appellant raises the question that Section 5 of the Act violates Article 1, section 19 of the Constitution of Tennessee and of the Federal Constitution in that it deprives those to whom it applies of freedom of speech. The language of the United States Constitution relied on is as follows: ''Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech,'' etc. Amendment 1.

The argument is advanced by appellant's counsel that the prohibition against advertising as to the noncollection of the sales tax from purchasers amounts to an abridgement of free speech. We think the contention is wholly unsound. The Act makes it a misdemeanor for the seller to advertise that he will not observe the law. No question

of denial of freedom of speech arises where the effect of the prohibition is to deny one the privilege of publicizing his violation of a valid statute. *Fox* v. *Washington*, 236 U. S. 273, 35 S. Ct. 383, 59 L. Ed. 573.

The above mentioned prohibitory clause is found in the tax statutes of as many as 24 States of the Union. This alone furnishes reasonable grounds for believing that the clause must be in the public interest and is within the police powers of the State. Moreover, counsel for the State have cited Federal Court cases holding that the right of free speech is not an absolute right and that the police power may operate to prohibit statements of a character inimical to the public welfare. *Gitlow* v. *People*, 268 U. S. 652, 45 S. Ct. 625, 69 L. Ed. 1138; *Whitney* v. *People, etc.*, 274 U. S. 357, 47 S. Ct. 641, 71 L. Ed. 1095. See also a discussion of this question in *Schenck* v. *United States*, 249 U. S. 47, 39 S. Ct. 247, 63 L. Ed. 470; *Frohwerk* v. *United States*, 249 U. S. 204, 39 S. Ct. 249, 63 L. Ed. 561; *Gompers* v. *Buck Stove & Range Co.*, 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.), 874.

Another contention of appellant is that the Act violates Article 2, section 28 of the Constitution of Tennessee by levying taxes upon transactions without uniformity and with differences in rates not based upon a reasonable classification. The foregoing is in substance the effect of appellant's complaint. We here quote the part of section 28 to which we have made reference: ". . . No one species of property from which a tax may be collected shall be taxed higher than any other species of property of the same value."

Now section 14 of the Act here assailed provides that the Commissioner of Finance may adopt brackets of prices as a method of collecting the tax. It is contended

that this provision operates to fix an arbitrary rate and not based upon reasonable classification. The Commissioner promulgated rules in conformity with the law and we think they are not in the least subject to the above criticism. As a result of the rates fixed in the rules there can be no dispute between the seller and the purchaser, which might result in unpleasant controversies. The rate of taxation is the same and is fair to one and all alike. The question here made was ruled adversely to appellant's contention in *Wilson et ux.* v. *City of Philadelphia et al.*, 330 Pa. 350, 198 A. 893, 895. In giving consideration to the matter the Supreme Court of Pennsylvania used the following language:

" 'The amount involved is so trifling as to be neither burdensome nor confiscatory and we might well apply the maxim: *"De minimis non curat lex"*. Aside from that however we do not think the ordinance offends the requirement of uniformity for the rate of impost does not vary even though the actual amount collected may vary with each taxpayer. *Turco Paint & Varnish Co.* v. *Kalodner*, 320 Pa. 421, 426, 184 A. 37. It is true that the application of the rate of impost of 2% on a 15¢ purchase will only amount to .003¢ but this amount the purchaser can only pay with a penny, while if he makes a number of 15¢ purchases if he does not have to pay the penny on each but only 2% on the total. But this may very well involve another fractional amount, which must also be paid with a penny. We do not however think the uniformity clause of the constitution is violated because of this result. The rate of taxation is the same and it is the same for everybody.'

"There is no such thing as perfect uniformity and equality in taxation. The best that can be done, and all

that is required, is that it should approximate uniformity and equality as nearly as possible. *Williamsport* v. *Wenner*, 172 Pa. 173, 182, 33 A. 544. The requirement of uniformity does not demand mathematical precision. We are certain the ordinance is not defective in this respect and that the bill was properly dismissed."

To the same effect see *Mouledoux* v. *Maestri*, 197 La. 525, 2 So. (2d) 11, 21.

Finally, it is contended that the body of the Act is broader than the caption and is in violation of Article 2, section 17 of the Constitution of Tennessee. The validity of many Acts of the Legislature has been questioned on this ground. Our cases are numerous and we could write an endless opinion if we should undertake to discuss them. The one most applicable here, and which is controlling, is *Cannon* v. *Mathes*, 55 Tenn. 520, 523. The statute in that case was quite similar in all respects to the one before us. We find no merit in this assignment of error. The title of the Act is revealing and there is nothing in the body that is not entirely germane to it. It cannot be doubted but that each and every member of the Legislature was put on notice as to its objects and purposes. Other cases besides *Cannon* v. *Mathes, supra,* could be cited but we deem it unnecessary to do so.

All assignments of error are overruled and the decree of the Chancellor is affirmed.

All concur.